## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SOCIETY INSURANCE, | ) | |
| | ) | No. 21 CV 1510 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CERMAK PRODUCE NO. 11, INC., | ) | |
| | ) | |
| Defendant. | ) | July 27, 2023 |
| | ) | |

## MEMORANDUM OPINION and ORDER

Before the court is Plaintiff Society Insurance's ("Society") motion for judgment on the pleadings.[1] Society asks the court to declare that it owes no insurance coverage to Defendant Cermak Produce No 11, Inc. ("Cermak") for the underlying lawsuit former employee Carla Perez[2] filed against Cermak in Illinois state court under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 ("Underlying Lawsuit"). For the following reasons, the motion is denied:

## Background

Perez filed a state class action complaint against Cermak in February 2021 alleging that Cermak violated BIPA during her employment from September 2016 to November 2018. (R. 1, Ex. A, Underlying Compl. ¶¶ 2-12.) BIPA protects an

---

[1] The parties consented to this court's jurisdiction. (R. 29, Jt. Consent.)

[2] Society originally joined Perez as a necessary party in this lawsuit, but the court dismissed her from the action without prejudice in May 2021 pursuant to a stipulation between Society and Perez. (R. 12; see also R. 11, Stipulation.)

individual's right of privacy and control over her biometric information and provides a private right of action to recover damages and other relief. 740 ILCS 14/20. In the Underlying Lawsuit, Perez claims that Cermak violated BIPA because it: (1) never informed its employees of the purpose or duration for which it collected, stored, or used their biometric information—including hand geometry scans, fingerprints, and other personal identifying information—and did not obtain their consent in relation to the same (Count I); (2) failed to maintain a written policy establishing a retention schedule and guidelines for destroying collected biometric information (Count II); and (3) disclosed its employees' biometric information to its timekeeping vendor without their consent (Count III).[3]  (Id. ¶¶ 40-61 (citing 740 ILCS 14/15).)  Perez seeks statutory damages for each such BIPA violation.  (Id.)

One month after Perez filed the Underlying Lawsuit, Society filed this federal coverage action seeking a declaration that it owes no insurance coverage to Cermak for the alleged BIPA violations giving rise to the Underlying Lawsuit because three separate exclusionary provisions in the policies Society issued to Cermak ("the Society Policies") apply.  (R. 1, Compl.; see also R. 48, Amend. Compl. ¶¶ 19-26, Exs. 2-8.)

First, Society contends that the Recording and Distribution Exclusion ("Recording Exclusion") in each Society Policy bars coverage, primarily based on the

---

[3] The Complaint includes two additional counts addressing the Data Breach Liability Coverage Form, but Society does not mention these counts in its motion.  (R. 1, Ex. A, Underlying Compl. ¶¶ 74-95.)

catch-all provision in subpart (4) of the exclusion provision.  The Recording Exclusion states:

> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
> (2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
> (3)    The Federal Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
> (4)    Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(R. 48, Amend. Compl. ¶ 48, Exs. 2-8.)  Society argues that the Underlying Lawsuit concerns such a "personal and advertising injury" and that BIPA falls squarely within subpart (4) of the Recording Exclusion.  (R. 57, Pl.'s Mot. at 6-11.)

Second, Society asserts that the Society Policies' Access or Disclosure Exclusion ("Disclosure Exclusion") precludes coverage of the timekeeping violations alleged in the Underlying Lawsuit.  By its terms, the Disclosure Exclusion applies to "[p]ersonal and advertising injury: "[a]rising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."  (R. 48, Amend. Compl. ¶ 50, Exs. 2-8.)

Third, Society argues that the Employment-Related Practices Exclusion ("Employment Exclusion") precludes coverage for all employment-related practices, including the timekeeping practices alleged in the Underlying Lawsuit. (R. 57, Pl.'s Mot. at 11.) The Employment Exclusion provides that:

> This insurance does not apply to "bodily injury" or "personal and advertising injury" to:
>
> (1) A person arising out of any:
>     (a) Refusal to employ that person;
>     (b) Termination of that person's employment; or
>     (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person[.]

(R. 48, Amend. Compl. ¶¶ 49, Exs. 2-8.) Cermak disagrees that any of these exclusions apply to the claims alleged in the Underlying Lawsuit.

## Analysis

Society moves for judgment on the pleadings, arguing that the Society Policies exclude coverage for the BIPA violations alleged in the Underlying Lawsuit. (R. 57, Pl.'s Mot.) Under Federal Rule of Civil Procedure 12(c), any party may seasonably move for judgment on the pleadings, the standard of review for which is the same as that for a Rule 12(b)(6) motion. *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 500 F. Supp. 2d 864, 867 (N.D. Ill. April 25, 2007) (citing *R.J. Corman Derailment Servs., LLC, v. Int'l Union of Operating Eng'rs*, 335 F.3d 64, 647 (7th Cir. 2003)). Viewing all alleged facts in the light most favorable to Cermak as the non-moving party, the

court must not grant Society's motion unless it finds beyond a doubt that Cermak cannot provide facts to support its claims of coverage. *See id.*

Illinois's rules of contract interpretation apply to the questions of law presented here—that is, whether the Society Policies' exclusions preclude coverage in the Underlying Lawsuit, such that Society has no duty to defend or indemnify Cermak for the claims alleged therein. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021) (citing *Sanders v. Ill. Union Ins. Co.*, 157 N.E.3d 463, 467 (Ill. 2019)). To determine whether an insurer has a duty to defend, the court compares the allegations in the underlying complaint to the relevant portions of the applicable policies. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). An insurer's duty to defend is broader than the insurer's duty to indemnify. *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579 (7th Cir. 2021). As such, an insurer is obligated to defend its insured if the alleged claims potentially fall within the scope of the applicable policies. *Id.* at 580. When interpreting the policies' terms, the court must determine the parties' intent as reflected by the contractual language. *See Outboard Marine Corp.*, 607 N.E.2d at 1212. The policies must be viewed as a whole, considering the type of insurance, risks assumed by the purchaser, subject matter of the contracts, and overall purpose for the policies. *See Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 778 (7th Cir. 2015) (citing *Crum & Forster Mgrs. Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1078 (Ill. 1993)). Also, each provision must be read as intending to serve a purpose. *Wehrle v. Cinc. Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013).

When an insurance policy's language is unambiguous, the court must give its terms their plain and ordinary meaning. *See Outboard Marine Corp.*, 607 N.E.2d at 108. That said, insurance policies—and provisions excluding coverage—are to be construed liberally in favor of the insured. *See JAR Labs. LLC v. Great Am. E & S Ins. Co.*, 945 F. Supp. 2d 937, 942 (N.D. Ill. 2013). Accordingly, unless there is an indication that a policy's term has a technical meaning, the court will read the policy as any ordinary and reasonable purchaser of such policy would. *I/N Kote v. Hartford Steam Boiler Inspection & Ins. Co.*, 115 F.3d 1312, 1317 (7th Cir. 1997) (collecting cases.) The court may consider extrinsic evidence only when the policy is facially ambiguous. *See Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 779 (7th Cir. 2003).

As such, policy terms will be construed in favor of the insured when there is more than one reasonable interpretation. *See Outboard Marine Corp.*, 607 N.E.2d at 109. Where possible, the court construes a policy "so that different provisions are harmonized and not conflicting with one another." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 765 N.E.2d 1152, 1156 (Ill. App. Ct. 2002) (quoting *Lincoln Logan Mut. Ins. Co. v. Fornshell*, 722 N.E.2d 239, 242 (Ill. App. Ct. 1999)). Thus, when the plain text of a policy excludes coverage provided elsewhere in the policy, the court must read the exclusion provision more narrowly than its plain terms would provide. *See id.* But if the ambiguity remains unresolved, the policy must be construed in favor of coverage. *See id.*

As an initial matter, Cermak bears the burden of showing that the Society Policies cover the claims alleged in the Underlying Lawsuit. *See, e.g., Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021) (citing *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009)). However, the parties do not dispute that Cermak has met this burden. Instead, both Society and Cermak focus solely on the "personal and advertising injury" alleged in the Underlying Lawsuit. (R. 57, Pl.'s Mot. at 4); (R. 63, Def.'s Resp. at 4-5.)

In *Citizens Insurance Company of America v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 997 (7th Cir. 2023), the Seventh Circuit held that "a violation of BIPA is a violation of privacy." The Society Policies define "personal and advertising injury" as including "[o]ral or written publication, in any manner, of material that violates a person's right to privacy." (R. 48, Amend. Compl. ¶ 48, Exs. 2-8.) Given this definition, Cermak has met its initial burden of showing that the Society Policies cover the claims alleged—violation of privacy—so the burden shifts to Society to demonstrate that an exclusion nonetheless removes the claims from coverage. *Wynndalco*, 70 F.4th at 996-97.

As previewed, Society argues that the Recording, Disclosure, and Employment Exclusions preclude coverage for the alleged BIPA violations. (R. 57, Pl.'s Mot.) The court uses canons of construction to resolve any ambiguity in the Society Policies as the Seventh Circuit and Illinois Supreme Court did, respectively, in *Wynndalco*, 70 F.4th at 999, and *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*,

183 N.E.3d 47, 59 (Ill. 2021), analyzing each exclusion under the doctrines of *ejusdem generis* and *noscitur a sociis*.

## A.  *Ejusdem Generis*

The court's role is not to seek out ambiguity where none exists but rather to apply the insurance policies' terms as written. *See Hobbs v. Hartford Ins. Co.*, 823 N.E.2d 561, 564 (Ill. 2005). As such, courts use various canons of construction to interpret contractual language where necessary to resolve an ambiguity. *See Wynndalco*, 70 F.4th at 999. *Ejusdem generis* is a textual canon that attempts to define a broad term using the preceding terms as context. *See Yates v. United States*, 574 U.S. 528, 545, (2015) ("Where general words follow specific words . . . the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."); *see also Poohbah Enters., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009). The court uses this canon to decipher whether the scope of the Society Policies' catch-all provisions can be limited by identifying a unifying thread in each exclusion provision.

To begin, Society asserts that because BIPA is an Illinois statute, the Recording Exclusion's catch-all provision specifically excludes insurance coverage. (R. 57, Pl.'s Mot. at 6-11.) As discussed, the catch-all provision states that it excludes the violation of "[a]ny federal, state, or local statute, ordinance or regulation, other than the TCPA CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of

8

material or information.". (R. 48, Amend. Compl. ¶ 48.) Cermak responds that this provision does not preclude coverage for BIPA claims because BIPA is categorically different than what the provision seeks to exclude. (R. 63, Def.'s Resp. at 7-9.) While the court agrees with Society that this provision's plain text seems to include BIPA—as a state statute that prohibits and limits distribution of information—it also agrees with Cermak that the Society Policies are ambiguous on this point when considered in their totality.

Indeed, the broad nature of this exclusion creates an ambiguity as it applies to the alleged BIPA claims because it conflicts with the policies' inclusive nature. On one hand, the policies purport to exclude coverage for all injuries arising out of statutory violations, but on the other hand, they claim to cover some of those violations. The Seventh Circuit recently concluded in *Wynndalco* 70 F.4th at 997-98, that reading a similar catch-all exclusion "literally and broadly would essentially exclude from the policy's coverage injuries resulting from all such statutory prohibitions, as they all have to do with the recording, distribution, and so forth of information and material," and that this tension creates an ambiguity. The same is true here.

More specifically, the Society Policies broadly claim to provide coverage for "personal and advertising injury" arising out of several violations, including oral or written publication that violates a person's right to privacy, slander, libel, and copyright infringement or appropriation of another's idea in an advertisement. (R. 48, Amend. Compl. ¶¶ 29, 48, Exs. 2-8.) However, the plain-text reading of the

Recording Exclusion would not allow coverage for these "personal and advertising injury" claims because injuries alleged from such acts have statutory causes of action, and statutory claims are specifically excluded. And, as in *Wynndalco*, most of the alleged statutory violations at issue here relate to the "printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." *Wynndalco*, 70 F.4th at 997-98.

The Society Policies thus simultaneously provide and exclude coverage for the same claims, such as "personal and advertising injury" claims, but as discussed, the court must: (1) avoid reading an exclusion in a manner that would remove coverage provided elsewhere in the policy, *see id.* at 996; and (2) resolve any ambiguity in favor of Cermak as the insured and against Society as the insurer, *Panfil v. Nautilus Ins. Co.*, No. 12 CV 6481, 2013 WL 6670779, at 1 (N.D. Ill. Dec. 18, 2013). But before doing so, the court must first attempt to remove the ambiguity and harmonize the provisions by reading the catch-all provision more narrowly than its plain-text reading would support. *See Wynndalco*, 70 F.4th at 996.

Both parties rely on the Illinois Supreme Court's *Krishna* decision in making their arguments. In *Krishna*, the insured was sued for violating BIPA because it allegedly collected customers' biometric information and disclosed the same to a vendor. Similar to the Society Policies, the insurance policy in *Krishna* covered "advertising" and "personal" injuries and included an identical provision covering injury arising from "[o]ral or written publication of material that violates a person's right of privacy." *Id.* at 51. However, like the Recording Exclusion's catch-all

10

provision, the *Krishna* policy also barred coverage for an advertising injury "arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." *Id.* The parties in *Krishna* disputed the meaning of "other than," with the insured arguing that *ejusdem generis* limited the catch-all provision to statutes regulating methods of communication, while the insurer argued "other than" referred to statutes categorically different from TCPA and CAN-SPAM, including BIPA. *Id.* at 55.

To resolve this disagreement, the *Krishna* court determined that *ejusdem generis* can be used when: (1) the statutes enumerated in the exclusion belong to the same category; (2) the exclusion has a title that indicates these statutes belong to a particular category; and (3) it is uncertain what the catch-all provision should include because it follows a discrete list of categorically similar statutes. *Id.* at 59-61. Applying this framework, the court concluded that the two applicable statutes belonged to the same category of regulating methods of communication, and the exclusions titled "Violation of Statutes that Govern E-Mails, Fax, Phone Calls, or Other Methods of Sending Material or Information" echoed this categorical thread. *Id.* The court then determined that it was unclear what the catch-all provision included and applied *ejusdem generis*, ultimately concluding that BIPA does not fall within the category of regulating methods of communication and did not exclude coverage. *Id.*

11

*Krishna's* exclusion is substantively similar to the Recording Exclusion's catch-all provision, yet there are critical differences that warrant a different approach here. First, while the Recording Exclusion includes the TCPA and CAN-SPAM, just like the policy in *Krishna*, it also includes the FCRA and FACTA, unlike that in *Krishna*. The Seventh Circuit in *Wynndalco*, 70 F.4th at 1002, concluded that the FCRA and FACTA do not regulate methods of communication and instead address credit, meaning that the statutes listed do not all belong to the same category.

Second, the Society Policies' full title for the asserted exclusion is "Recording and Distribution of Material or Information In Violation of Law," which, unlike that in the *Krishna* policy, does not limit the exclusion to methods of communication. *See Krishna*, 183 N.E.3d at 59-62. The Seventh Circuit determined in *Wynndalco* that the absence of express language stating that the exclusion refers to privacy, regulating methods of communication, or any other type of subject matter is significant. *See Wynndalco*, 70 F.4th at 1002. To be sure and as discussed, a broad range of violations could fit within the Recording Exclusion if construed in accordance with its plain terms, possibly eliminating coverage for a wide array of statutory claims, including privacy violation claims that the Society Policies otherwise purport to specifically cover. *See id.*

Third, the Recording Exclusion is substantially broader than that in *Krishna* because it also excludes printing, dissemination, disposal, collecting, recording, and distribution of material information. *Compare Krishna*, 183 N.E.3d at 52, with (R. 48, Amend. Compl. ¶ 48, Exs. 2-8). The Seventh Circuit in *Wynndalco* determined

12

that these additional terms signify that the exclusion includes more than just methods of communication. *See Wynndalco*, 70 F.4th at 1002. As such, the court cannot apply the *ejusdem generis* canon to resolve the ambiguity in the Recording Exclusion.

Nevertheless, Society argues that the unifying thread among the statutes is that they relate to privacy, (R. 57, Pl.'s Mot. at 9), as the insurer in *Wynndalco* argued, 70 F.4th at 994. However, *Wynndalco* concerned a nearly identical exclusion provision involving the same statutes listed in the Recording Exclusion, and the Seventh Circuit rejected the same argument, concluding that whereas the FCRA and FACTA address the secrecy of an individual's credit information, the TCPA and CAN-SPAM address seclusion, which is an individual's right to be left alone. *Id.* at 1003. In sum, there is no apparent and readily discernable theme in the exclusion, so *ejusdem generis* cannot resolve the ambiguity in the Recording Exclusion.

The court next applies the canon to the Disclosure Exclusion which, as explained, bars coverage for "personal and advertising injury" that: "[a]ris[es] out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." (R. 48, Amend. Compl. ¶ 50, Exs. 2-8.) The Underlying Lawsuit alleges that Cermak disclosed employees' biometric information to its timekeeping vendor without consent, (R. 1, Ex. A, Underlying Compl. ¶¶ 2-12), which Society contends is "personal" because hand geometry and fingerprints are

13

biometrically unique to each individual, (R. 57, Pl.'s Mot. at 5). As a result, Society says, Cermak's alleged actions of disclosing private information to its timekeeping vendor caused "personal and advertising injury" that is excluded from coverage under the Disclosure Exclusion. (Id.) Cermak counters that the alleged BIPA violations do not fit within the type of injuries the Disclosure Exclusion outlines and are therefore not subject to exclusion. (R. 63, Def.'s Resp. at 4-7.)

Applying the *ejusdem generis* doctrine, the court first attempts to limit the scope of the catch-all provision—"any other type of nonpublic information"—in the Disclosure Exclusion. *See Wynndalco*, 70 F.4th at 999. While Society says this language should be interpreted broadly, as explained, the court must try to harmonize the insurance policy's provisions and avoid nullifying coverage provided elsewhere in the policy. *U.S. v. Gonzales*, 117 S. Ct. 1032, 1035 (1997); *Gen. Agents Ins.*, 765 N.E.2d at 1156. "Under the *ejusdem generis* doctrine, when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.'" *People v. Davis*, 766 N.E.2d 641, 645 (Ill. 2002). As such, the court must define the likeness between the terms outlined in the provision, if any likeness exists, to determine if BIPA violations fall within the exclusion. But the Disclosure Exclusion encompasses seemingly disparate types of information, none of which expressly mentions privacy. Without an identifiable theme, the catch-all phrase cannot be narrowed.

14

Indeed, in *Citizens Insurance Co. of America v. Thermoflex Waukegan, LLC*, the court rejected an insurer's argument that an identical provision excluded coverage for BIPA claims. 588 F. Supp. 3d 845, 855 (N.D. Ill. 2022); (see also R. 48, Amend. Compl. ¶ 48, Exs. 2-8). Among other things, the *Thermoflex* court reasoned that "BIPA expressly distinguishes between 'biometric identifiers,' and 'confidential and sensitive information,'" pointing out that "biometric identifiers" refers to hand and fingerprint scans, whereas "confidential and sensitive information" is defined as "personal information that can be used to uniquely identify an individual or an individual's account or property," such as "a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number." *Id.* (quoting 740 ILCS 14/10). Because the exclusion at issue in *Thermoflex* listed patents, trade secrets, processing methods, customer lists, financial information, credit card information, and health information—as opposed to biometric identifiers—the court held that the exclusion did not apply to BIPA violations. 588 F. Supp. 3d at 855. Just as the *Thermoflex* court concluded that there was no singular unifying thread in the exclusion there, no thread or theme indicates BIPA violations should be excluded in the identical provision here. As a result, *ejusdem generis* does not resolve the ambiguity in the Disclosure Exclusion.

Society also argues that the Employment Exclusion removes Cermak's alleged BIPA violations from coverage because BIPA violations amount to "wrongful acts" relating to employment. (R. 57, Pl.'s Mot. at 11-13.) Cermak responds that

15

timekeeping is not the type of employment-related practice the exclusion encompasses because the exclusion pertains only to "targeted" and "personal" acts. (Id.) As discussed, the Employment Exclusion states that coverage is not available to "[e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." (R. 48, Amend. Compl. ¶ 49, Exs. 2-8.) Society interprets this provision as "exclud[ing] coverage for 'personal and advertising injury' arising from any 'employment-related practices, policies, act or omission.'" (R. 57, Pl.'s Mot. at 11.) But this argument oversimplifies the exclusion's meaning and disregards the discrete examples set forth therein.

The Society Policies do not exclude coverage for "any employment-related practice" as a blanket statement. The phrase "such as" indicates that the Employment Exclusion is intended to exclude employment-related practices of a specific kind. While the plain-text reading could include any act an employee must perform as part of her employment, such as clocking in and out of work, exclusions are to "be read narrowly and . . . applied only where . . . clear, definite, and specific." *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005) (citation omitted). Where, as here, this plain-text reading would "swallow" coverage for all employee claims—including those the Society Policies purport to cover, such as employee claims alleging "personal and advertising injury" from a breach of privacy,

slander, and libel—the exclusion must be ruled ambiguous. Accordingly, the court must attempt to narrow this provision. *See Wynndalco*, 70 F.4th at 16.

But there is no common theme among the examples provided in the Employment Exclusion, which include: "coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution." (R. 48, Amend. Compl. ¶ 49, Exs. 2-8.) And the court in *Thermoflex* interpreted an identical exclusion to bar two different categories: legal claims (e.g., defamation, harassment, and discrimination); and employment actions (e.g., demotion, evaluation, and reassignment). 588 F. Supp. 3d at 852. The court determined that "[t]he mixture of examples in the Employment-Related Practices exclusions amplifies the ambiguity of the exclusions as applied in this case." *Id*. Because the Employment Exclusion does not include a singular category of employment-related practices, *ejusdem generis* does not successfully resolve the ambiguity.

## B.    *Noscitur a Sociis*

Because *ejusdem generis* fails to resolve the ambiguity in all three of the exclusions, the court attempts to resolve the ambiguity by applying *noscitur a sociis* to limit the broad scope of the exclusions. *Noscitur a sociis* is a principle used "to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words[.]'" *Yates*, 574 U.S. at 543 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)).

As for the Recording Exclusion, the Seventh Circuit in *Wynndalco* interpreted a nearly identical exclusion provision and ruled that because the statutes listed in the exclusion do not belong to the same category, there was no way to use the accompanying words to discern the meaning of the catch-all provision. 70 F.4th at 1004 ("Under this canon, 'an ambiguous term may be given more precise content by the neighboring words with which it is associated.'") (quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)). Instead, a broad range of violations could fit within this exclusion, possibly eliminating coverage for claims it purports to cover, such as "personal and advertising injury" claims. *Id.* Here too, this canon does not successfully limit the scope of the applicable catch-all provision because there is no common thread among the neighboring words.

As for the Disclosure Exclusion, the types of personal and confidential information listed therein share a meaning uncharacteristic of biometric information. While it may appear as though hand geometry and fingerprints share this attribute, the Seventh Circuit ruled otherwise in *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 496 (7th Cir. 2012), when it determined that handprints and fingerprints are not private or sensitive, at least when compared with other private information such as patents, trade secrets, processing methods, and customer lists. The court noted that the latter types of private information are traditionally kept confidential and secret because they constitute proprietary information that can have a significant financial impact on a company or individual, and that health information is traditionally kept private for personal reasons. *Id.*

Unlike proprietary business or private health information, handprints and fingerprints do not fall within the categories of private information the Disclosure Exclusion seeks to bar from coverage. As explained, "other types of confidential information" must not be interpreted so broadly that they are "inconsistent with . . . accompanying words." *Yates*, 574 U.S. at 543 (citation omitted). Because the court concludes that the list enumerates types of "confidential and sensitive" information, rather than examples of biometric information, *noscitur a sociis* cannot resolve the ambiguity. Likewise, the *noscitur a sociis* doctrine is equally unhelpful in resolving the Employment Exclusion's ambiguity because there is no consistency among the employment practices listed that the court can use to narrow the scope of the catch-all provision.

Because neither canon resolves the ambiguity in the Recording, Disclosure, and/or Employment Exclusions, the court must return to the plain-text meaning. As described above, the plain text is extremely broad—so broad that the exclusion would eliminate statutory claims for the "personal and advertising injury" the Society Policies purport to cover elsewhere. The Seventh Circuit addressed the same situation, ultimately rendering the insurance provision "intractably ambiguous." *Wynndalco*, 70 F.4th at 1004. Accordingly, this court must construe the meaning of the catch-all provision in favor of Cermak and conclude that the BIPA claims, at a minimum, potentially fall within the coverage territory. *Panfil*, 799 F.3d at 1. Thus, the court rules that, at a minimum, Society has a duty to defend Cermak in the Underlying Lawsuit.

19

## Conclusion

For the foregoing reasons, Society's motion for judgment on the pleadings is denied.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**